UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANY NAVARRO SANCHEZ,<br><br>                            Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, in his official capacity as Warden of Otay Mesa Detention Center; PATRICK DIVVER, in his official capacity as San Diego Field Office Director, ICE Enforcement Removal Operations; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and PAMELA BONDI, in her official capacity as Attorney General of the United States,<br><br>                           Respondents. | Case No.: 25-cv-2396-JES-MMP<br><br>**ORDER (1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS and (2) ORDERING STATUS UPDATE**<br><br>**[ECF No. 1]** |

      Before the Court is Petitioner Melany Navarro Sanchez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. The parties have briefed the merits and the Court held a hearing on September 24, 2025. ECF Nos. 1, 2, 4, 9. For the reasons set forth below, the Court grants the petition.

## I. BACKGROUND

Petitioner is a nineteen-year-old citizen of Nicaragua who fled the country with her parents due to political persecution. ECF No. 1 ¶¶ 1, 7. Petitioner and her family faced persecution for their political opinions and activism against the Ortega government, including helping others to flee from the country. ECF No. 1 ¶¶ 7, 20. Petitioner also resisted efforts by the Sandinistas to recruit her into the Sandinista youth, and narrowly escaped being kidnapped by the Sandinistas. ECF No. 1 ¶ 21. As a result of these circumstances, Petitioner asserts that she and her family have a well-founded fear of being imprisoned or killed by the Ortega regime. *Id.*

On December 12, 2024, Petitioner arrived in the United States and was inspected in an appointment made through the CBPOne application. ECF No. 1 ¶ 22. She was paroled into the United States that same day. *Id.* U.S. Customs and Border Protection issued Petitioner a Form I-94 upon her parole into the country that was valid for two years, until December 12, 2026. *Id.* Petitioner has had three immigration court hearings following her parole into the United States, and has attended each one. ECF No. 1 ¶ 24.

On April 11, 2025, the Department of Homeland Security ("DHS") sent Petitioner an email stating, without explanation, that her parole would be terminated within 7 days. ECF No. 1 ¶ 23. The email told her to depart the United States immediately. *Id.*

On July 30, 2025, Immigration and Customs Enforcement ("ICE") officials detained Petitioner at her third immigration court hearing. ECF No. 1 ¶ 24. DHS moved to dismiss Petitioner's removal proceedings in order to put her into expedited removal proceedings. *Id.* The immigration judge gave time for Petitioner's attorney to brief the issue. *Id.* Nonetheless, ICE took Petitioner into custody without a warrant, notice, or opportunity to be heard. ECF No. 1 ¶ 25.

Petitioner has no criminal history and has attended all hearings in her immigration case, including those after DHS's email stating that her parole would be terminated. ECF No. 1 ¶¶ 24, 27. In detention since July 30, 2025, Petitioner has suffered mental and

physical health issues arising from detention, and experienced significant distress as a result of strip searches following friend and family visits. ECF No. 1 ¶ 26.

On September 15, 2025, Petitioner filed her Petition for Writ of Habeas Corpus against the officials involved in her detention in their official capacities. ECF No. 1. On September 22, 2025, Respondents filed their return. ECF No. 4. On September 23, 2025, Petitioner filed a traverse with the Court's permission. ECF Nos. 6, 9.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts, and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A prisoner prevails in her petition for writ of habeas corpus if she shows that "[she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

## III. DISCUSSION

### A. Jurisdiction

Respondents argue that this Court lacks subject matter jurisdiction to hear this petition under 8 U.S.C. §§ 1252(g) and (b)(9). ECF No. 4 at 2-6. For the reasons outlined below, the Court finds that those statutes do not bar jurisdiction over Petitioner's claims.

The Court's jurisdiction to hear writs of habeas corpus from immigration detainees depends on the type of claims at issue. Congress has granted the Attorney General the power to "commence proceedings, adjudicate cases, and execute removal orders" against aliens, and forbidden judicial review of "any cause or claim by or on behalf of any alien arising from" such decisions. 8 U.S.C. § 1252(g). District courts also may not review on habeas "questions of law and fact, including interpretation and application of constitutional and statutory decisions, arising from any action taken or proceeding brought to remove an alien." 8 U.S.C. § 1252(b)(9). In interpreting "arising under" in both statutes, the Supreme Court has cautioned against "expansive interpretations" that would cause "staggering results" like rendering prolonged detention claims unreviewable. *Jennings v. Rodriguez*,

583 U.S. 281, 294 (2018); *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482-483 (1999).

Here, Petitioner seeks only review of the legality of her detention (ECF No. 1 at 2), which does not require judicial intervention into the Attorney General's decisions to commence proceedings, adjudicate cases, and execute removal orders. The government asserts that Petitioner's claims of illegal detention "necessarily arise" from the Attorney General's decision to commence removal proceedings against her. ECF No. 4 at 3. Adopting this interpretation of 8 U.S.C. §§ 1252(g) and (b)(9) would eliminate judicial review of immigration detainee's claims of unlawful detention, which the Court finds inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241. 538 U.S. at 294; *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (finding the duration of immigration detention reviewable under § 2241); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) (finding that the court would have jurisdiction under § 2241 to consider errors of law in immigration detention, including due process violations); *Hernandez v. Session*, 872 F.3d 976, 986 (9th Cir. 2017) (finding that the court had jurisdiction to hear constitutional claims about immigration detention under § 2241 despite the government characterizing the challenge as unreviewable). As other courts in this district have found in similar matters, the Court has jurisdiction to hear Petitioner's claims that her detention is unlawful under 28 U.S.C. § 2241. *See Alegria Palma v. LaRose*, 25-cv-1942-BJC-MMP, ECF No. 14 (S.D. Cal. Aug. 11, 2025); *Mendez Los Santos v. LaRose*, 25-cv-2216-TWR-MSB, ECF No. 14 (S.D. Cal. Sept. 4, 2025) (granting petition by minute order); *Rokhifirooz v. LaRose et al.*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal Sept. 15, 2025).

B. **Due Process**

Petitioner contends that Respondent violated the Fifth Amendment's Due Process Clause by revoking her parole and subjecting her to detention without notice, evidentiary findings, or an opportunity to be heard. ECF No. 1 ¶¶ 48, 49. The Court agrees.

"A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Miranda v. City of Casa Grande*, 15 F4th 1219, 1225 (9th Cir. 2021) (internal quotations and citation omitted).

Petitioner was deprived of a constitutionally protected liberty interest when Respondents revoked her parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. at 690. Although immigration detention is administrative, it is still subject to due process clause review. *Hernandez v. Sessions*, 872 F3d at 981 ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.") When the government grants an alien parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment. *Alegria Palma v. LaRose*, 25-cv-1942, ECF No.14 (S.D. Cal. Aug. 11, 2025) (finding that "continued freedom after release on own recognizance" was a core liberty interest). Here, Petitioner was deprived of her liberty interest in her prior parole status when Respondents revoked that parole and placed her in detention.

Respondents also denied petitioner due process in the revocation of her parole. "The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (Frankfurter, J., concurring). In the immigration context, "the Constitution requires the government to afford notice of any action against an alien [and] requires an opportunity for the alien to be heard. [] The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner." *Ying Fong v. Ashcroft*, 317 F.Supp.2d 398, 403 (S.D.N.Y. 2004) (internal quotations and citations omitted).

An alien's opportunity to be heard regarding the revocation of her parole is only meaningful if the government comports with its own internal standards regarding parole

revocation. DHS has the authority to revoke an alien's parole "at any time" on a discretionary, but not unlimited, basis. *See* 8 U.S.C. § 1226(b); *Mohammed H. v. Trump*, No. 25-1576 (JWB/DTS), 2025 WL 1692739, at *5 (D. Minn. June 17, 2025) ("The Government has wide—but not unlimited—discretion in the immigration realm.") The Board of Immigration Appeals ("BIA") has held that DHS may change the conditions of an alien's parole only when there is a sufficient change of circumstances to justify that change. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) (as cited in *Alegria Palma*, No. 25-cv-1942-BJC-MMP, ECF No.14 at 3). "In practice, the DHS re-arrests individuals only after a 'material' change in circumstances." *Ortega v. Bonnar*, 415 F.Supp.3d 963, 968 (N.D. Cal. 2019). To satisfy due process, those changed circumstances must represent individualized legal justification for detention. *Mohamed H.*, 2025 WL 1692739 at *5 (granting a writ of habeas corpus on due process grounds due to a lack of individualized legal justification for changing the petitioner's status).

    Here, Respondents revoked Petitioner's parole without a showing of change in circumstances related to her case. Respondents assert that Petitioner's present detention is lawful because they have the authority to change her status and revoke her parole. ECF No. 4 at 7. This is true, but does not address the basic requirements of due process with which Respondents must comport in exercising that authority. In their briefing, Respondents do not state a "sufficient change in circumstances" to justify revoking Petitioner's parole, or any individualized justification at all. *See Matter of Sugay*, 17 I. & N. Dec. at 640. Petitioner's parole into the U.S. was based on her asylum claim, the underlying facts of which have not changed, and she was in possession of a still-valid I-94 document. ECF No. 1 ¶ 22. There was no evidence from her conduct that she was a flight risk, as she attended all of her immigration court hearings. ECF No. 1 ¶ 24. Thus, Respondents did not satisfy the requirement of due process in revoking Petitioner's parole.

    While Respondents do not explicitly claim that they provided constitutionally sufficient notice and a hearing regarding the revocation of Petitioner's parole, they attached to their return a notice to appear sent to Petitioner stating that her parole was revoked. ECF

No. 4-1 at 7. The notice implies that a hearing would occur, although Respondents do not assert that one did. *Id.* Since Respondents do not have any individualized justification to revoke Petitioner's parole, the Court declines to assume that the attached notice and its implication of a hearing constituted notice and a meaningful opportunity to be heard as required by the Due Process Clause. *See Ying Fong*, 317 F.Supp.2d at 403. Thus, as there is no evidence of due process protections in the record, Respondents denied Petitioner constitutionally adequate protections before depriving her of her liberty interest in her parole.

Because Respondents detained Petitioner by revoking her parole in violation of the Due Process Clause, her detention is unlawful. The petition for writ of habeas corpus is **GRANTED** on due process grounds.

### C. Administrative Procedure Act

The Court need not reach Petitioner's claims arising under the Administrative Procedure Act ("APA"), because it grants her petition on due process grounds. However, to preserve Petitioner's rights on appeal, the Court briefly finds that the APA also provides separate and adequate grounds to grant this petition for writ of habeas corpus.

The APA requires courts to hold challenged final agency actions unlawful when the actions are "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious when the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). When an agency changes its policies, it also "must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dept. of Homeland Security v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30 (2020) (internal quotations and citations omitted). A government agency terminating an alien's status is subject to review under the APA as a final agency action when the termination has lasting consequences that

would not be cured even if the agency reinstated status through its internal processes. *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3rd Cir. 2019); *Doe v. Noem*, 778 F.Supp.3d 1151, 1159 (W.D. Wash. April 17, 2025).

Here, given Respondents' statement that Petitioner is inadmissible and in removal proceedings (ECF No. 4 at 2, 10), their termination of her parole status is reviewable as a final agency action that will have lasting incurable consequences. The record here shows that DHS did not articulate a satisfactory explanation including a "rational connection between the facts found and the choice made" for the change to Petitioner's status. *See Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43. In fact, Respondents do not state any reasons for the revocation of Petitioner's parole based on any individualized facts about her asylum case or her actions on parole at all. *See generally* ECF No. 4. Respondents also do not show any consideration of the "serious reliance interests" that they have engendered in Petitioner by granting her parole prior to their change in policy. *See Dept. of Homeland Security v. Regents of the Univ. of Calif.*, 591 U.S. at 30. Because Respondents revoked Petitioner's parole and detained her without any rational individualized fact-finding or consideration of the effects of altering their prior decisions, Respondents acted arbitrarily and capriciously in violation of the APA.

Respondents' violation of the APA in their decision to revoke Respondent's parole and detain her constitutes adequate and independent grounds by which her confinement is unlawful. This Court also **GRANTS** Petitioner's petition for writ of habeas corpus on this basis.

### D. CONCLUSION

For the foregoing reasons, Petitioner's writ of habeas corpus is **GRANTED**. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of her preexisting parole and Form I-95. The Parties are **ORDERED** to file a Joint Status Report by September 30, 2025, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated: September 26, 2025

_____
Honorable James E. Simmons Jr.
United States District Judge